# Chicago, R. I. & P. Ry. Co. v. Pearl Keely, Adm'x, etc.

1. INSTRUCTIONS—*Death from Negligent Act.*—An instruction in an action to recover damages resulting from a death from negligence, which has a tendency to mislead the jury into believing that notwithstanding the fact that the deceased may have been guilty of negligence in bringing about the accident, yet if the speed of the train or neglect to ring the bell contributed to cause the injury the plaintiff was entitled to recover, is erroneous.

**Action in Case.**—Death from negligence. Appeal from the Circuit Court of Rock Island County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded. Opinion filed February 1, 1900.

HENRY CURTIS and JACKSON & HURST, attorneys for appellant.

WOOD & PEEK, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court. This was a suit by appellee for damages claimed by her on account of the loss of her husband, Henry Keely, who was alleged to have been killed by a train of appellant at a street crossing in Moline, Illinois, on September 25, 1897.

The declaration, which consisted of four counts, charged that the deceased, Henry Keely, while exercising due care in his own behalf, and while attempting to cross the railroad tracks of appellant on Thirteenth street, in the city of Moline, was struck and killed by a certain train of the defendant, " not a passenger train." It is also charged in the several counts that the train was running at a greater rate of speed than provided by the city ordinances of Moline; that it was running at a dangerous rate of speed; that the engineer and fireman did not keep proper look-out while crossing the highway; that no bell was rung or whistle blown, as provided by statute; that no bell was rung and kept constantly ringing, as provided by the ordinances of said city; that no warning was given of the

approach of the train, and that there was no head-light upon the engine. Defendant pleaded the general issue. There was a trial by jury, which resulted in a verdict in favor of appellee for $5,000. Judgment was rendered upon the verdict, and appellant appealed from the same to this court.

At the time in question, Henry Keely worked in Moline, but his family lived at Port Byron, some fourteen miles distant. Thirteenth street, where the accident is alleged to have occurred, runs north and south. Parallel with it 320 feet to the west is Twelfth street. Appellant's railroad crosses these streets from the northwest to the southeast, the railroad station being located on the south side of the track, just east of Thirteenth street. Appellant had three tracks, the south one being used for trains going east, the one just north of it for the west bound trains, and the next one to the north for switching and extra work.

The Chicago, Milwaukee & St. Paul Railroad used appellant's depot and tracks in the city of Moline, and also used the tracks as far east as Port Byron Junction. Some fifty feet north of appellant's tracks is the track of the Chicago, Burlington & Quincy Railroad, and just north of the latter's right of way, about mid-way between Twelfth and Thirteenth streets, was the house of Henry Reece, with whom Keely boarded when in Moline. This house was about 450 feet northwest from appellant's depot. About half past six o'clock on the evening of the day mentioned, Henry Keely left his boarding-house to go to appellant's depot for the purpose, as he said, of buying a ticket for passage on the Chicago, Milwaukee & St. Paul Railroad to Port Byron. As Keely came from the house he met witnesses Walstencroft and Charles Reece. At that time the freight train, which is alleged to have caused his death, was approaching Twelfth street from the west. Reece spoke to Keely and said, "That isn't your train," to which the latter replied, "I know, but I want to go to the depot before the other train comes in, the next train, and get a ticket." Reece further testified that Keely went straight south

to the Rock Island road, then turned to the left toward Thirteenth street; that he went close to the track and disappeared behind a shed, which stood north of appellant's tracks near the place where he turned.

This was the only positive evidence upon the subject, as Walstencroft said he did not look after Keely and was not certain as to the course he took. It therefore appears that the last seen of Keely prior to the accident, he was close to appellant's tracks between Twelfth and Thirteenth streets going east. He was shortly afterward discovered lying dead just north of the south track of appellant a short distance east of the west line of Thirteenth street. No one saw him on Thirteenth street prior to the time the engine crossed the same. Only two witnesses profess to have seen him after he was lost sight of by Reece and before he was found lying by the side of the track.

The witness Nystrom, who was at the time a boy of twelve years of age, testified that he and another boy were standing on the north side of the track waiting for the train, which consisted of forty-four cars, to go by; that the locomotive had passed the crossing before he reached there, and when all but six or seven cars had passed he looked to the west to see how near the caboose was, and at that instant saw what appeared to him to be a bundle, rolling on the ground as though it had fallen from the train; that when he first saw it, it was on or near the edge of the sidewalk, and that it rolled from there to the place where it was found; that after the train had passed he went to it and discovered it was the body of a man.

The witness Lagerlef testified that he was going south on Thirteenth street, and that when he got as far as the C. B. & Q. tracks, he noticed something "careering" upon the track of appellant, over which the train had just passed, and that he afterward went up to the track and found the body of a man.

We think it appears from the preponderance of the evidence that the engineer was in his place, keeping a proper look-out while crossing the street, and that he did not see

the deceased; that the headlight on the engine was lighted and that the proper signals were given; that the gates with which the crossing was provided, were let down by the gate-keeper, and that the latter rang his bell to signal the approach of the train. There was evidence tending to show, however, that the train was going at a higher rate of speed than was permitted by the ordinance of the city. It was sought to be shown by appellee that deceased was struck by the engine on the crossing, but that was impossible from appellee's own evidence in the case. Indeed, it is very doubtful from the evidence whether he was struck on the crossing at all. As he was first seen by the witness Nystrom near the end of the train, rolling like a bundle from the sidewalk toward the east, and the body was found near the east side of the sidewalk, it is highly probable that he first came in contact with the train at some point west of Thirteenth street, near the place he was last seen. Whether deceased received his injuries in an attempt to get on the train as argued by appellant, or was caught by the cars in some other way, does not appear. It does sufficiently appear, however, that he was not struck on the crossing, and was not struck by the engine or head of the train, and under these circumstances, we can not say that he was, at the time, in the exercise of ordinary care for his own safety.

Upon the trial, appellant offered an instruction telling the jury that, although they might believe from the evidence that the train at the time of the accident was running over the Thirteenth street crossing at a greater rate of speed than six miles an hour, or that the bell was not rung at the time, yet if they further believed from the evidence that the speed of the train or the neglect to ring the bell was not the direct or immediate cause of the injury to Keely, then the jury could not find defendant guilty of the alleged negligence in running the train at a greater rate of speed than six miles an hour or for negligence in not ringing the engine bell. This instruction was modified by the court striking out the words " direct or immediate " and inserting others, so that the instruction told the jury that'

if they believed that the speed of the train or neglect to ring the bell was not the cause, in whole or in part, of the injury to Keely, then the jury should not find the defendant guilty on the ground of the alleged negligence in running the train, etc. While the modification of this instruction would not of itself furnish a sufficient cause for reversal, yet we think it was in a measure improper. The instruction as originally offered was not erroneous, although the words "direct or proximate" would have been better than "direct or immediate" in referring to the cause of the injury. The words "in whole or in part," however, inserted by the court, may have been misleading to the jury, as it might have been thought from the instruction that notwithstanding the fact that the deceased may have been guilty of negligence in bringing about the accident, yet if the speed of the train or neglect to ring the bell contributed to cause the injury, the appellee was entitled to recover.

The judgment of the court below is accordingly reversed and the cause remanded for another trial. Reversed and remanded.